**AFFIDAVIT OF SPECIAL AGENT RYAN MCGONIGLE IN SUPPORT OF
A CRIMINAL COMPLAINT AGAINST JOHN MICHAEL RATHBUN**

I, RYAN MCGONIGLE, having been sworn (telephonically), state:

Introduction

1. Since 2017, I have served as a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Boston Division, Springfield Resident Agency. As a Special Agent, I am responsible for the investigation of federal criminal offenses. Since 2017, I have been assigned to the Joint Terrorism Task Force ("JTTF"), where I work with agents and officers investigating crimes involving terrorism both domestic and international, and national security violations.

2. As a Special Agent, I have conducted and participated in criminal investigations that have resulted in arrests for crimes involving threatening communications, violations of the National Firearms Act, child exploitation, color of law violations, controlled substance violations, and financial crimes. I have personally been involved in the execution of numerous state and federal search and arrest warrants that have led to the conviction of many individuals.

3. I respectfully submit this Affidavit in support of a Criminal Complaint charging that on or about April 2, 2020, the defendant John Michael Rathbun ("Rathbun" or "the defendant"), did:

    a. transport and receive, in interstate or foreign commerce, an explosive with the knowledge and intent that it will be used to kill, injure, and intimidate any individual and unlawfully to damage and destroy any building, vehicle, and other real or personal property, in violation of 18 U.S.C. § 844(d); and

    b. attempt to damage and destroy, by means of fire and an explosive, any building, vehicle, and other real and personal property used in interstate and foreign

1

commerce and in any activity affecting interstate and foreign commerce, in violation of 18 U.S.C. § 844(i).

(collectively, the "Subject Offenses").

4. The facts in this Affidavit come from my personal observations and review of records and other evidence, my training and experience, and information obtained from other agents and witnesses. This Affidavit includes only those facts I believe are necessary to establish probable cause for the requested Criminal Complaint and does not include all of the facts uncovered during the investigation.

## The Subject Offenses

5. Title 18, United States Code, Section 844(d) provides: "Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be [punished]." 18 U.S.C. § 844(d).

6. Title 18, United States Code, Section 844(i) provides: "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be [punished]." 18 U.S.C. § 844(i).

7. Title 18, United States Code, Section 844(j) provides that for the purposes of Sections 844(d)-(i):

> [T]he term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture,

> or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).

8. Title 18, United States Code, Section 232(5) states:

> The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

18 U.S.C. § 232(5).

## The Discovery of a White Supremacist Organization on Two Social Media Platforms and the Targeting of Ruth's House in Longmeadow, Massachusetts

9. Based on my training and experience, and the experience of others involved in this investigation, I know that users of various online platforms frequently discuss their hatred of religious, racial, and ethnic minorities, and express violence toward these groups, for the purpose of radicalizing individuals online and inciting them to commit acts of violence.

10. In March 2020, FBI agents discovered a white supremacist organization (the "Organization") that operated over the Internet on a social media platform ("Platform 1"). According to the FBI's review of the Organization's use of Platform 1, various users generally:

   a. promoted mass killings in the United States and elsewhere directed against religious, racial, and ethnic minorities;

   b. discussed plans to engage in these crimes themselves;

   c. posted pictures of various weapons and tactical gear;

      d.    discussed using various explosive and incendiary devices, including improvised devices commonly known as "Molotov cocktails"; and

      e.    identified targets, such as mosques and synagogues.

11.    On or about March 4, 2020, a user ("User 1") specified two choices for mass killings, including "that jew nursing home in longmeadow massachusetts." Based upon my training, experience, and knowledge of the case, I believe "that jew nursing home in longmeadow" refers to Ruth's House, which is a Jewish-sponsored assisted living residential facility for seniors of all faiths located at 780 Converse Street, Longmeadow, MA.

12.    The FBI subsequently discovered that the Organization operated over the Internet on another social media platform ("Platform 2"). According to the FBI's review of the Organization's use of Platform 2, various users generally:

      a.    discussed their hatred of religious, racial, and ethnic minorities;

      b.    communicated their intentions and/or plans to engage in large-scale acts of violence targeting these groups; and

      c.    shared information about various weapons and explosive devices.

13.    The Organization's Platform 2 forum included a Calendar in which users could create events that listed the dates, times, and locations; invite other users to attend the event; and communicate concerning the event. The Calendar listed the following entries for April 2-3, 2020:

      a.    April 2, 2020: "hating niggers day"; and

      b.    April 3, 2020: "jew killing day."

14.    The Calendar entry for "jew killing day" was created by a particular user ("User 2"), listed the location as "Jew Nursery Home" (without a specifying address), contained the message "FUCK JEWS," and was accepted by six other users.

15. User 2's profile on Platform 2's forum for the Organization stated: "I hate jews. We should make a real holocaust sometimes. Only mistake Hitler made" and "Hey nigger. I hate niggers."

16. Based upon the FBI's preliminary investigation, I believe that User 1 on Platform 1 and User 2 on Platform 2 are likely the same individual.

17. Based on my training, experience, and knowledge of the case, I believe that:

   a. the location "Jew Nursery Home" refers to Ruth's House, which had earlier been identified by User 1 on Platform 1 as "that jew nursing home in longmeadow Massachusetts" on March 4, 2020;

   b. User 2's entry for "jew killing day" was a call to action that sought to incite users to target Ruth's House with violence on or about April 3, 2020; and

   c. Rathbun placed an incendiary device at Ruth's House on or about April 2, 2020, as set forth below.[1]

Rathbun's Placement Of An Incendiary Device Outside Ruth's House on April 2, 2020

18. According to the Longmeadow Police Department ("LPD"), at approximately 10:00 a.m. on April 2, 2020, the LPD discovered a homemade incendiary device placed at the entrance of Ruth's House. The device was located within feet of a widely used pedestrian walkway along Converse Street, which is a very busy main road in Longmeadow, and approximately 50 yards from the Ruth's House facility.

19. Ruth's House is located within one square mile of several other Jewish facilities, including three Jewish temples, a Jewish private school, and a Jewish Community Center.

---

[1] The FBI has not yet determined whether Rathbun has been involved in any way with the Organization or in any other white supremacist activities. The FBI's investigation is ongoing.

20. The incendiary device consisted of a five-gallon plastic Scepter gas canister,[2] filled with liquid believed to be flammable gasoline, with burnt paper (later identified as a Christian religious pamphlet) placed in the nozzle of the canister. A portion of the pamphlet was charred and appeared to have been lit on fire in an attempt to ignite the gas. The LPD observed what appeared to be blood stains on both the canister handle and on the pamphlet. The LPD transferred the canister and the pamphlet to the Massachusetts State Police ("MSP") Crime Laboratory in Springfield (the "Crime Lab").

21. On or about April 6, 2020, the Crime Lab tested samples of the stains on both the canister and the pamphlet, and determined that the samples were human blood. The Crime Lab identified a male DNA profile from each sample.

22. On April 9, 2020, the Crime Lab determined that the DNA profile left on the gas can and pamphlet at Ruth's House were linked to the DNA profile of Rathbun. The MSP Crime Lab confirmed the DNA match through a search of the Consolidated DNA Index System ("CODIS"). CODIS is an FBI database that stores convicted offender and arrestee DNA profiles. CODIS allows a local, state, or federal law enforcement agency the ability to search the forensic DNA profile of an unidentified suspect against their state database of convicted offender and arrestee profiles. If there is a candidate match in the Convicted Offender or Arrestee Index, the laboratory will go through procedures to confirm the match and, if confirmed, will obtain the identity of the suspected perpetrator.

---

[2] According to Scepter's website (www.scepter.com), the Scepter is "the world's leader in providing hazardous materials containers." Scepter was founded in Canada and acquired in 2014 by Myers Industries of Akron, OH. *Id.*

23. According to my review of Rathbun's criminal history records, Rathbun has the following arrests and/or convictions based upon a continuance without a finding ("CWOF"):

    a. July 2, 2011: Rathbun was arrested for breaking and entering at nighttime. Rathbun was given probation, paid a fine, the case was ultimately CWOF.

    b. July 5, 2011: Rathbun was arrested for breaking and entering at nighttime, larceny, destruction of property, burglarious tools, breaking and entering a motor vehicle, and receiving stolen property. Rathbun was required to pay a fine and ultimately all of the charges were CWOF.

    c. September 11, 2011: Rathbun was arrested for knowingly receiving stolen property. Rathbun was required to pay a fine and the charge was CWOF.

<u>The Search of Rathbun's Person, His Residence, and Three Vehicles</u>

24. On April 11, 2020, Magistrate Judge Katherine A. Robertson authorized search warrants for Rathbun's person, his residence in East Longmeadow (the "Residence"), and three vehicles that were registered to Rathbun's mother, with whom he lived at the Residence.

25. On April 15, 2020 at approximately 7:45 a.m., I and other federal agents executed the search warrants at the Residence. Soon after, Rathbun, his mother and father, and his 18-year old daughter exited the Residence. I advised Rathbun of his *Miranda* rights, which he waived orally and in writing. I observed that Rathbun's hands had numerous cuts or wounds in various states of freshness, including an open wound on his right thumb. I also observed a large plastic gas can on the Residence porch, and agents located other gas cans in the shed. Rathbun agreed to speak with me and LPD officer Pamela Chaplin, and stated the following:

    a. Rathbun routinely gets up at approximately 6:00 a.m., and drives on Converse Street past the Jewish school in Longmeadow every morning on his way

to a methadone clinic. When asked whether he was familiar with Ruth's House (which is also on Converse Street located a short distance from the school), he stated that he did not know what else was on the street.

b.    His drug of choice is heroin. Rathbun initially stated that he last used drugs approximately one month ago, but later in the interview he admitted that he used drugs, including cocaine, approximately two weeks ago, and further in the interview, he agreed to take a drug test but admitted that he would test positive because he had used a small amount of drugs last night.

c.    When asked about an incident at the Quality Inn in Chicopee on March 3, 2020,[3] Rathbun stated that, "I was out of my mind" on Xanax, pot, dope, and alcohol, and admitted that he had stayed in the room with a prostitute and had damaged a screen in the hotel room.

d.    When asked about his employment, he stated he had left his job as a solar panel installer on good terms, but later admitted, when confronted, that he had left because his supervisor had accused him of stealing copper wire.

e.    When asked about anti-Semitic sentiments or white supremacy, Rathbun categorically denied any involvement or interest in those subjects.

f.    When asked about Platform 1, he stated that he only uses the Internet to access a dating site and pornography.

g.    When asked about the gas cans found at the Residence, Rathbun stated:

---

[3] According to the Chicopee Police Department, on March 3, 2020, Rathbun had called the police to the Quality Inn because he thought that three men were in the process of breaking into his van in the hotel parking lot. When CPD arrived, the officers observed that the van was locked with no forced signs of entry.

    i. the can on the porch contained a 50-50 mix of gasoline and another substance, which he used for a leafblower.

    ii. the cans in the shed contained gasoline, which he used for a lawnmower;

    iii. his mother had obtained the gasoline approximately three weeks ago from a gas station; and

    iv. he and his family never had a yellow gas canister.

  h. Rathbun denied placing kind of explosive device at the entrance to Ruth's House. When informed that his blood was found on the gas can found at Ruth's House, he could not explain how this was possible.

  i. Rathbun initially disclaimed any personal interest in religion, but stated that his mother was involved in a local church and distributed Christian proselytizing pamphlets. [Rathbun's mother also stated to other agents that she printed her own pamphlets to distribute to the public, but did not recognize the pamphlet that was found in the incendiary device at Ruth's House.]

  j. When agents presented him with photographs of the bloodstained Christian pamphlet that had been used to light the incendiary device at Ruth's House and informed him that his DNA matched the blood, Rathbun's demeanor visibly changed, and a short while later, he stated that he did not know what he was going to do and that he wanted to cry.

## Conclusion

26. Based on the information described above, I have probable cause to believe that on or about April 2, 2020, in the District of Massachusetts and elsewhere, Rathbun committed the

Subject Offenses, in violation of 18 U.S.C. §§ 844(d) and 844(i).

Sworn to under the pains and penalties of perjury telephonically:

/s/ *Ryan Mcgonigle*
RYAN MCGONIGLE
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me telephonically:

Dated: April 15, 2020

/s/ *Katherine A. Robertson*
KATHERINE A. ROBERTSON
United States Magistrate Judge
District of Massachusetts