UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 20-mj-3061-KAR

UNITED STATES OF AMERICA

v.

MICHAEL JOHN RATHBUN

ORDER

Robertson, U.S.M.J.

Defendant Michael John Rathbun is charged by complaint with violations of 18 U.S.C. §§ 844(d) and (i). Pursuant to Fed. R. Crim. P. 5.1, the court held a preliminary hearing on the complaint on April 29, 2020. The government's exhibits 1-7 and 9-10 were admitted without objection. FBI Special Agent Boucher testified on direct and cross-examination. For the reasons set forth below, the court finds that the government established probable cause to believe that Mr. Rathbun violated §§ 844(d) and (i) of Title 18.

1. Applicable legal principles

The government's burden of proof as to probable cause is much less onerous than the beyond a reasonable doubt standard that applies at a criminal trial. "[T]he government need only present sufficient evidence 'to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused.'" *United States v. Hardy*, 640 F. Supp. 2d 75, 77 (D. Me. 2009) (quoting *In re Lam*, No. 1:08-mj-247 GSA, 2009 WL 1313242, at *6 (E.D. Cal. May 12, 2009)). "In making this determination, the court engages in a 'totality of the circumstances analysis.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238

1

(1983)).  A finding of probable cause is appropriately based on a court's finding of a "fair probability" that the defendant committed the offenses charged.  *See Gates*, 462 U.S. at 238.

At a preliminary hearing, a defendant is entitled to cross-examine the government's witnesses and to introduce evidence but may not object to evidence on the basis that it was illegally acquired.  Fed. R. Crim. P. 5.1(e).  "[T]he evidence taken [at a probable cause hearing] need not meet the standards for admissibility at trial.  Indeed, at a preliminary hearing, in federal court a 'finding of probable cause may be based upon hearsay in whole or in part.'"  *United States v. Kin-Hong*, 110 F.3d 103, 120 (1st Cir. 1997) (quoting Fed. R. Crim. P. 5.1(a)); *see also* 1 C.A. Wright & A.D. Leipold, Federal Practice and Procedure § 92 (4th ed. 2008) ("The Rules of Evidence, other than with respect to privilege, do not apply at a preliminary hearing.").  "This is because a 'preliminary hearing is not a minitrial on the issue of guilt,' *Coleman v. Burnett*, 477 F.2d 1187, 1201 (D.C. Cir. 1973), rather, 'its function is the more limited one of determining whether probable cause exists to hold the accused for trial.' *Barber v. Page*, 390 U.S. 719, 725 … (1968)."  *Kin-Hong*, 110 F.3d at 120.  These general principles should be applied to each element of the crimes with which the defendant is charged, which in this case are violations of Title 18 U.S.C. §§ 844(d) and (i).

Section 844(d) provides:

Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be [punished]."

Section 844(i) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be [punished]."

For purposes of sections 844(d) and (i), the term "explosive" means:

> gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes, (other than electronic circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices, within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).[1]

2. Facts

On April 2, 2020, a resident of a house on Converse Street in Longmeadow called the police to report a suspicious yellow container placed near a sidewalk and the entrance to Ruth's House at 832 Converse Street (Exh. 2 at 3; Exhs. 9-10). Longmeadow police officers and members of the town's fire department responded to the call. The object was a 5-gallon plastic canister manufactured by Scepter, a corporation with no manufacturing facilities in Massachusetts (Exh. 2 at 3). There was a partially burnt piece of paper, later determined to be a

---

[1] An explosive or incendiary device within the meaning of paragraph (5) of section 232 of Title 18 means:

> Dynamite and all other forms of high explosives, … any explosive bomb, grenade, missile, or similar device, and … any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

The government was not required to prove that the plastic container with the pamphlet stuffed into its nozzle satisfied the definition of an explosive or incendiary device in 18 U.S.C. § 232(5) because the definition of "explosive" in 18 U.S.C. § 844(j) is broader than the section 232(5) definition of an explosive or incendiary device and provided the government with alternative means of meeting the statutory requirements which it has satisfied to the standard required for a probable cause finding.

3

religious pamphlet, "stuffed in the spout of the container."  After a police officer emptied the liquid from the yellow plastic container, he expressed the opinion, based on his training and experience, that the liquid in the container was gasoline (Exh. 2 at 5).

Mr. Rathbun lives in East Longmeadow and regularly drives on Converse Street past the location where the container was found.  There were human blood stains on the container and on the partially burnt pamphlet (Exh. 3 at 1).  The DNA profiles were the same for the blood stains on the pamphlet and on the canister (Exh. 3 at 2).  When DNA from the blood samples was run against DNA samples in the Combined DNA Index System, the DNA profile came back to Mr. Rathbun.  A subsequent DNA analysis of a swab of Mr. Rathbun's saliva confirmed a match between Mr. Rathbun and the blood stains on the partially burned pamphlet and the yellow canister to a very high degree of probability (Exh. 6 at 1).

3. Analysis

Based on the DNA evidence, the government has shown probable cause to believe that Mr. Rathbun put the pamphlet in the nozzle of the canister and placed the canister in the location in which it was found.  A person of ordinary prudence and caution would further find that Mr. Rathbun ignited the pamphlet that he stuffed in the nozzle of a five-gallon canister that he knew contained gasoline, and I make all of these findings for purposes of the probable cause determination.  The government also showed probable cause, through the testimony of FBI agent Boucher, that the 5-gallon plastic container and the gasoline in the container traveled across state lines.

The remaining questions are whether there is probable cause to believe that: (1) Mr. Rathbun transported an explosive with the intent to injure or intimidate any individual or to damage or destroy any building, vehicle, or other personal or real property (section 844(d)); and

(2) using fire or an explosive, attempted to damage any building, vehicle, or other real or personal property (section 844(i)). There is sufficient evidence to answer each of these questions in the affirmative.

First, there is probable cause to believe that paper pamphlet was stuffed into the nozzle of the Scepter canister to serve as a wick. The canister was a device containing an ingredient (gasoline) that might, if ignited by fire, cause an explosion. Mr. Rathbun placed the Scepter container with an improvised wick in a busy neighborhood near a nursing home, an assisted living facility, and low-income housing, and across the street from a row of single-family homes. At the least, it is reasonable to infer that Mr. Rathbun intended to intimidate people living on or near Converse Street by placing what appeared to be an improvised bomb in their midst. While there may be other explanations or reasons for Mr. Rathbun's actions, those explanations are not more persuasive than the inferences of intent proposed by the government.

Second, the government has shown a fair probability that Mr. Rathbun attempted to use fire or an explosive device to damage or destroy a vehicle or real or personal property used in interstate commerce. As the government points out, the JGS campus includes rental property, which is sufficiently connected to interstate commerce to meet the statutory requirements (Dkt. No. 19 at 4-5). *See United States v. DiSanto*, 86 F.3d 1238, 1248 (1st Cir. 1996). He attempted to ignite a five-gallon canister containing gasoline that he placed near a busy street and near the sign at the entrance advertising the presence of Ruth's House, an assisted living facility. In view of the distances between the location of the canister and Ruth's House, the JGS nursing home and Genesis House, it may not be appropriate to infer that Mr. Rathbun attempted to damage or destroy Ruth's House or other buildings on the JSG campus. But the legal definition of real property is not limited to buildings. It encompasses "property 'so annexed that it cannot be

5

removed without material injury to the real estate or to itself,'" *Am. Home Assurance Co. v. AGM Marine Contractors, Inc.*, 467 F.3d 810, 814 (1st Cir. 2006) (quoting *Medford Tr. Co. v. Priggen Steel Garage Co.*, 174 N.E. 126, 128 (Mass. 1930)), and includes the land itself and trees, roads and paths thereon. *See Milligan v. Tibbetts En'g Corp.*, 461 N.E.2d 808 (Mass. 1984). Items that can be removed from real property without damage to the item are personal property and are also included within the protections of § 844(i). *See id.* In view of the placement of the Scepter container, there is a fair probability that Mr. Rathbun attempted to damage vehicles or JGS real or personal property when he ignited the pamphlet that was the wick of the improvised bomb.

    4. <u>Conclusion</u>

For the foregoing reasons, the court finds that the government has shown probable cause to conclude that John Michael Rathbun committed violations of 18 U.S.C. §§ 844(d) and (i) on or around April 2, 2020.

Date:  May 1, 2020                               /s/ Katherine A. Robertson
                                                                                              KATHERINE A. ROBERTSON
                                                                                              U.S. MAGISTRATE JUDGE